IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2026

**STATE OF TENNESSEE v. MICHAEL SNEED**

**Appeal from the Circuit Court for Lake County
Nos. 23-CR-10961A, 23-CR-10962A    Tony Childress, Chancellor**

———————————

**No. W2025-00758-CCA-R3-CD**

———————————

The Defendant, Michael Sneed, appeals from his guilty-pleaded convictions for two counts of the sale of methamphetamine in an amount over 0.5 gram, a Class B felony. *See* T.C.A. § 39-17-417(a), (c)(1) (Supp. 2022) (subsequently amended).  The trial court ordered the Defendant to serve a sixteen-year sentence in confinement.  On appeal, the Defendant, a Range II offender, contends the court erred by denying alternative sentencing.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

Sean P. Day, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender ─ Appellate Division; Tyler Moore, Qualified Law Student (on appeal); and Jeremy T. Armstrong (at plea and sentencing), Assistant Public Defender, for the appellant, Michael Sneed.

Jonathan Skrmetti, Attorney General and Reporter; Caroline W. Weldon, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Andrew Hays, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Lake County Grand Jury indicted the Defendant and Gregory Rivers[1] for two counts of the sale of methamphetamine in an amount over 0.5 gram.  The Defendant

---

[1] Mr. Rivers died before disposition of his case.

pleaded guilty to the charges and agreed to be sentenced as a Range II offender, leaving the trial court to determine the length and manner of service.

At the guilty plea hearing, the Defendant acknowledged that he was a Range II offender, that his sentencing range was twelve to twenty years, and that his sentences were to run concurrently. The State provided a recitation of the facts supporting the plea as follows:

> On 23-CR-10961A on March 9th, 2023 TBI Agents Angie Taylor and Jeff Jackson used a confidential informant . . . to conduct a controlled purchase of methamphetamine from Gregory Rivers and Michael Sneed. [The confidential informant] was outfitted with . . . visual and audio electronic surveillance. She contacted Mr. Rivers, ordered what is commonly called an 8-ball of methamphetamine and then drove to Mr. Rivers' residence here in Lake County, Tennessee. When she got to the area, she met Mr. Sneed outside, went into the residence, met with Mr. Rivers and Mr. Sneed for a few minutes and then purchased the 8-ball, which was approximately three and a half grams of methamphetamine from Mr. Sneed and gave him $80 in confidential buy money. That was later sent off to the TBI lab and confirmed to be methamphetamine with a lab weight of 3.3 grams, I believe.
>
> On 23-CR-10962A, the following day, March 10th, the same confidential informant . . . was again working with Agents Taylor and Jackson to do an undercover purchase for Mr. Rivers and Mr. Sneed. Again, she contacted both of them arranged to purchase half an ounce of methamphetamine, drove to the same residence, found Mr. Sneed inside and purchased the approximate half ounce with confidential buy money. That was also sent to the TBI Crime Lab and confirmed positive for methamphetamine.

The court found that the Defendant understood his rights and knowingly entered his guilty pleas.

At the sentencing hearing, the Tennessee Department of Correction (TDOC) presentence investigation report and the Westate Corrections Network Pre-Sentence Report were received as exhibits. The TDOC presentence report reflected that the then-thirty-nine-year-old Defendant left school during the twelfth grade after being arrested and never obtained his GED. The Defendant reported that he suffered from anxiety, depression, and seizures, for which he took prescription medication. The Defendant reported that his seizures were the result of a head injury. The Defendant reported that he began drinking alcohol and using marijuana and cocaine as a teenager. The Defendant

also reported that he began using methamphetamine approximately five years ago and last used methamphetamine on the day of his arrest. Ten years ago, he successfully attended a rehabilitation program at the Lighthouse Mission Ministry after which he maintained "extended periods" of sobriety, the longest being between four and five years. He reported that his last period of sobriety ended seven years ago. The Defendant was not married, had no children, and lived with his mother. The Defendant's criminal history began in 2008 and included convictions for traffic offenses, misdemeanor theft, felony theft, the sale of a cocaine in a drug-free zone, casual exchange, and burglary. The Defendant was found to have violated the conditions of his probation in 2019, 2021, and 2022. The Strong-R risk and needs assessment concluded the Defendant had a "high drug" risk factor, noting that the Defendant "continued using drugs." The Westate Pre-Sentence Report noted that the Defendant would be a suitable candidate for community corrections.

The Defendant testified that he began using marijuana when he was age fifteen, and that he had been using methamphetamine all of his adult life. Regarding the charges for which he was being sentenced, the Defendant said that he did not know the informant, that Mr. Rivers had set up the two drug sales, that Mr. Rivers was the Defendant's source for methamphetamine, and that the Defendant had assisted Mr. Rivers in procuring methamphetamine. The Defendant acknowledged that his substance use led to his prior convictions for the sale of cocaine, burglary, and theft. The Defendant agreed that he would need to maintain sobriety to successfully complete a sentence of probation or community corrections. The Defendant said that ten years ago, he completed a rehabilitation program and that he understood that using methamphetamine was dangerous. The Defendant stated that "[w]hatever I need to do, I will do to get off drugs."

Bernice Sneed, the Defendant's mother, testified that the Defendant had experienced seizures, for which he was under the care of a neurologist. Ms. Sneed said that the seizures made the Defendant "distorted" and confused. Ms. Sneed said that the Defendant could live with her if he were released and that she would help the Defendant attend a rehabilitation program.

The State argued that enhancement factors applied, that the Defendant was not a favorable candidate for alternative sentencing due to his Class B felony conviction and criminal history, that confinement was necessary to protect society, and that measures less restrictive than incarceration had frequently been applied unsuccessfully. The Defendant requested an alternative sentence and contended that his prior convictions were the result of his substance addiction, and he acknowledged that if sentenced to community corrections, he could attend a long-term rehabilitation program.

The trial court noted that the Defendant was a Range II offender. The court applied enhancement factor (1), finding that the Defendant had a history of criminal convictions in addition to those necessary to establish the appropriate range. T.C.A. § 40-35-114(1) (Supp. 2022) (subsequently amended). The court also applied enhancement factor (13) because the Defendant was on probation at the time he committed the offenses for which he was being sentenced. *Id.* § 40-35-114(13). The court applied mitigating factor (1), noting that there was no evidence that the drug sales caused bodily injury to anyone. *Id.* § 40-35-113(1) (2025). The court applied mitigating factor (2), that the Defendant acted under strong provocation, because the Defendant was a "drug user." *Id*. § 40-35-113(2). The court also applied mitigating factor (4), noting that the Defendant played a minor role in the commission of the offense. *Id*. § 40-35-113(4). In this regard, the court recognized Mr. Rivers as the "ringleader" of the offenses.

The trial court addressed the issue of alternative sentencing by considering that the Defendant continued to have a substance use addiction despite having previously completed a rehabilitation program. The court also considered the presentence reports, the Strong-R risk and needs assessment recommendations, and it noted that the Defendant had seizures. The court found that the Defendant's prior criminal history was "pretty extensive" and "[went] back for a long time." The court noted that the Defendant was on probation at the time he committed the present offenses and that, in the past, he had committed crimes while on probation. The court also noted that the Defendant's criminal history included three violations of probation and that his probation was revoked after the last violation of probation. The court found that "[p]robation ha[d] been applied to [the Defendant] numerous times over his career as a criminal, and they are not working. He's not taking advantage of the opportunities that he's been given[.]"

The trial court concluded that the Defendant's history of probation violations was a "strong indicator" that the Defendant "[would] not abide by the terms of any probation" and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. The court noted that the sale of drugs was a "serious issue" and found that a sentence of full probation would unduly depreciate the seriousness of this offense. The court rejected alternative sentencing and ordered the Defendant to serve two concurrent sixteen-year sentences in confinement as a Range II, multiple offender. This appeal followed.

The Defendant contends that the trial court erred by failing to order community corrections, for which he argues that he is a suitable candidate. Specifically, the Defendant contends that the court's sentencing determination is not entitled to a presumption of reasonableness because the court failed to give sufficient consideration to the Defendant's completion of a rehabilitation program and failed to give sufficient consideration to the Defendant's health. The Defendant does not challenge the length of his sentence. The State responds that the court's determination is entitled to a

presumption of reasonableness and that the court did not abuse its discretion by ordering the Defendant to serve his sentence in confinement. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Likewise, the standard of review for questions related to probation or any other alternative sentence, including community corrections, is an abuse of discretion with a presumption of reasonableness for within-range sentences reflecting a decision based upon the principles and purposes of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (Supp. 2022) (subsequently amended). A defendant who is ineligible for probation might still be a candidate for community corrections. *Id*. § 40-36-106(a)(1)(A) (Supp. 2022) (subsequently amended); *see State v. Kendrick*, 10 S.W.3d 650 (Tenn. Crim. App. 1999). A defendant who is a felony offender and would otherwise be unfit for probation due to a history of drug or alcohol abuse or mental health problems and "whose special needs are treatable and could be served best in the community rather than in a correctional institution" may be eligible for community corrections. T.C.A. § 40-36-106(c). The burden of establishing suitability for an alternative sentence rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000)); *see* T.C.A. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989).

A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the potential for rehabilitation or treatment, and the result of the validated risk and needs assessment. T.C.A. §§ 40-35-103 (2025), -210 (2025); *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987); *see* T.C.A. § 40-35-102 (2025). A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *Ashby*, 823 S.W.2d at 168; *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006).

The Defendant does not contest that a Range II multiple offender who is guilty of a Class B felony is not considered to be a favorable candidate for alternative sentencing. *See* T.C.A. § 40-35-102(6)(A). The Defendant is also not eligible for probation because

his sentence range is more than ten years. *See id.* §§ 40-35-303(a); 40-35-112(b)(2) (providing a Range II sentence for a Class B felony is "not less than twelve (12) years nor more than twenty (20) years"). However, the Defendant is "eligible for, but not automatically entitled to, a community corrections sentence under Tennessee Code Annotated section 40-36-106(a)." *State v. Johnson*, 342 S.W.3d 520, 523 (Tenn. Crim. App. 2009) (citations omitted).

A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to grant probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The record reflects that the court did not abuse its discretion in denying community corrections. The trial court determined that the Defendant's history of probation violations was a "strong indicator" that the Defendant would not abide by the conditions of alternative sentencing. The court considered that the Defendant had been on probation numerous times but had failed to take "advantage of the opportunities that he's been given[.]" The court also noted that the Defendant had three prior violations of probation, the last of which ended in a full revocation of his probation, and that the Defendant committed additional offenses while on probation. The Defendant was not a favorable candidate for alternative sentencing, and the court gave great weight to the Defendant's numerous violations of probation and his relapse after having successfully completed a rehabilitation program. *See State v. Wagner*, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988) (concluding that trial court properly exercised its discretion in denying

community corrections where the record evidenced, among other factors, that there was "little hope for rehabilitation").

Considering whether confinement was appropriate, the trial court determined that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. *See* T.C.A. § 40-35-103(1)(C). The court considered the Defendant's history of prior criminal behavior, noting that the Defendant had three violations of probation and that the Defendant had relapsed after completing a rehabilitation program. The court noted that the Defendant's criminal history was "pretty extensive and goes back for a long time." The court considered that the Defendant was on probation when he committed the offenses for which he was being sentenced and that the Defendant had committed crimes while previously on probation. The court noted that the circumstances of the offense were described at the guilty plea and through the Defendant's testimony and that the Defendant's social history included completing a drug rehabilitation program. The court also noted that alternative sentencing would unduly depreciate the seriousness of the Defendant's offenses because "the sale of drugs is a serious issue."

The record reflects the trial court identified the enhancement and mitigating factors upon which it relied. The court considered that no one was injured during the offenses, that the Defendant's addiction provoked him to commit the offenses, and that the Defendant played a minor role in the commission of the offenses. *See id.* § 40-35-113(1), (2), and (4). The court relied heavily on the Defendant's past probation violations, his criminal history, his history of substance use, the fact that he was on probation when he committed the present offenses, and his relapse after completing a rehabilitation program.

The record reflects that the trial court considered the relevant sentencing factors and placed on the record its reasons for denying alternative sentencing. The court considered the presentence reports, including the risk and needs assessment, the principles of sentencing, the arguments of counsel, the nature and characteristics of the criminal conduct, mitigating and enhancement factors, the Defendant's prior criminal conduct, testimony from the Defendant and his mother, and the Defendant's potential for rehabilitation. Also, the court imposed a within-range sentence. Accordingly, the court's sentencing decision is accorded the presumption of reasonableness. *See Caudle*, 388 S.W.3d at 278-79.

The Defendant asserts that the trial court failed to give sufficient consideration to the Defendant's prior completion of a rehabilitation program. The record reflects that the court acknowledged that the Defendant had previously completed a rehabilitation program, although the Defendant had later relapsed to substance use. In this regard, the court found that the Defendant had not taken advantage of the opportunities given to him

on probation. The record reflects that the court weighed this factor in its determination and did not abuse its discretion in its consideration of this factor.

The Defendant asserts that the trial court failed to give sufficient consideration to the Defendant's health. In this regard, the Defendant relies on a statement the Defendant made at the guilty plea hearing while the court and counsel were setting a date for the sentencing hearing. After the court "encouraged" the Defendant to get his affairs in order and not to get in any more trouble, the Defendant replied, "I don't go nowhere no more" and "I've been having three or four seizures a day, so I'm trying to get back to the neurologist and get things figured out." Although the Defendant stated that he was having multiple daily seizures, there was no medical evidence presented regarding the nature and severity of the Defendant's medical condition. The Defendant's mother testified only that the Defendant had seizures that left him confused. The record reflects that the Defendant presented no medical proof that the Defendant suffered from multiple daily seizures or that the Defendant required specialized medical treatment that could not be accommodated by the TDOC. Accordingly, the court acknowledged what proof had been presented: that the Defendant suffered from seizures. The court did not abuse its discretion in this regard.

The trial court did not abuse its discretion by ordering the Defendant to serve his sentences in confinement. The Defendant is not entitled to relief. In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE